# EXHIBIT 2

## SHARE PURCHASE AGREEMENT

This SHARE PURCHASE AGREEMENT (this "*Agreement*"), dated as of June 28, 2013, is entered into by and between Green Field Energy Services, Inc., a Delaware corporation (the "*Company*") and MOR MGH HOLDINGS, L.L.C., a Delaware limited liability company, (the "*Investor*").

### RECITALS

WHEREAS, in connection with a borrowing from Goldman Sachs Bank USA, the Investor has agreed to purchase Preferred Shares (as defined herein) on terms and conditions set forth herein; and

WHEREAS, the Company desires to issue and sell Preferred Shares to the Investor on terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the foregoing premises and the covenants hereinafter contained, the parties hereto, intending to be legally bound, hereby agree as follows:

### ARTICLE I.
### DEFINITIONS

SECTION 1.01    Definitions.  As used in this Agreement, the following terms shall have the following meanings (such meanings to be equally applicable to both the singular and plural forms of the terms defined):

"*Agreement*" is defined in the preamble hereto.

"*Closing*" is defined in Section 2.04.

"*Closing Date*" means, when used with respect to a Closing, the date of such Closing.

"*Company*" is defined in the preamble hereto.

"*Governmental Entity*" means any court or tribunal in any jurisdiction (domestic or foreign) or any governmental or regulatory body, agency, department, commission, board, bureau or other authority or instrumentality (domestic or foreign).

"*Investor*" is defined in the preamble hereto.

"*Law*" means any statute, law, rule or regulation or any judgment, order, writ, injunction or decree of any Governmental Entity.

"*Liquidation Preference*" means $100.00 per Preferred Share.

"*Material Adverse Change*" means a material adverse change in the business, operations, assets, liabilities, properties, financial condition or results of operations of the Company and its subsidiaries, taken as a whole.

"*Per Share Purchase Price*" means the Liquidation Preference.

"*Preferred Shares*" means shares of preferred stock, par value $0.01 per share, of the Company.

"*Purchase*" is defined in Section 2.01(a).

"*Purchase Price*" means, $10,000,000.00.

## ARTICLE II.
## PURCHASE AND SALE OF PREFERRED SHARES

SECTION 2.01    Purchase and Sale of Preferred Shares.

(a)    The Investor agrees to purchase from the Company, and the Company agrees to sell and transfer to the Investor, the number of Preferred Shares determined by the quotient of $10,000,000.00 divided by the Per Share Purchase Price by (the "*Purchase*").

(b)    Payment with respect to the Purchase shall be made on the date hereof by wire transfer of immediately available funds to an account or accounts designated by the Company in writing to the Investor.

SECTION 2.02    Conditions of the Investor to the Purchase.  The obligation of the Investor to make the Purchase and to purchase the Preferred Shares to be purchased by each in connection therewith is subject to the prior satisfaction or waiver of the conditions contained in this Section 2.03.

(a)    The Company shall have performed in all material respects all of its obligations under this Agreement required to be performed by it on or prior to the date of the Purchase.

(b)    There shall have occurred no Material Adverse Change.

SECTION 2.03    Closing Conditions of the Company.  The Company's obligation to issue and sell the Preferred Shares to be issued and sold and by it hereunder on the Closing Date is subject to the satisfaction or waiver, on or before the Closing Date, of the conditions contained in this Section 2.04:

(a)    The Investor shall deliver to the Company an aggregate purchase price equal to $10,000,000.00, by wire transfer or by such other method as maybe reasonably acceptable to the Company, in immediately available funds. Such amounts shall be paid to the account of the Company as shall have been designated in writing a reasonable time in advance to the Investor by the Company; and

(b)    The Investor shall have performed in all material respects all of his obligations under this Agreement required to be performed by him on or prior to the Closing Date.

SECTION 2.04          Closing.  The closing of the Purchase shall be the date hereof ("*Closing*").

## ARTICLE III.
## MISCELLANEOUS

SECTION 3.01          Survival of Agreements.  All covenants, agreements, representations and warranties made in this Agreement or any certificate or instrument delivered to the Investor pursuant to or in connection with this Agreement shall survive the execution and delivery of this Agreement, the issuance, sale and delivery of the Preferred Shares, and all statements contained in any certificate or other instrument delivered by the Company hereunder or in connection herewith shall be deemed to constitute representations and warranties made by the Company.

SECTION 3.02          Further Assurances.  The parties hereto agree to take such actions and execute and deliver such other documents or agreements as may be necessary or desirable for the implementation of this Agreement and the consummation of the transactions contemplated hereby.

SECTION 3.03          Notices.  Any notice, request, demand or other communication required or permitted to be given to a party hereto pursuant to the provisions of this Agreement will be in writing and will be effective and deemed given under this Agreement on the earliest of: (a) the date of personal delivery, (b) the date of transmission by facsimile, with confirmed transmission and receipt, (c) one day after deposit with a nationally-recognized courier or overnight service such as Federal Express, or (d) five days after mailing via certified mail, return receipt requested. All notices not delivered personally or by facsimile will be sent with postage and other charges prepaid and properly addressed to the party to be notified at the address set forth for such party:

If to the Company:

Green Field Energy Services, Inc.
4023 Ambassador Caffery Parkway, Suite #200
Lafayette, LA 70503
Facsimile: 337.988.6693
Attention: Chief Financial Officer

If to the Investor:

MOR MGH HOLDINGS, L.L.C.
4023 Ambassador Caffery Parkway
Lafayette, LA 70503
Facsimile: 337.266.2188
Attn: Michel Moreno

Any party hereto (and such party's permitted assigns) may change such party's address for receipt of future notices hereunder by giving written notice to the other party hereto.

SECTION 3.04    <u>Governing Law.</u>  This Agreement and the performance of the transactions and the obligations of the parties hereunder will be governed by and construed and enforced in accordance with the laws of the State of New York, without giving effect to any choice of law principles.

SECTION 3.05    <u>Entire Agreement.</u>  This Agreement constitutes the entire agreement and understanding of the parties hereto in respect of its subject matters and supersedes all prior understandings, agreements, or representations by or among such parties, written or oral, to the extent they relate in any way to the subject matter hereof or the transactions contemplated hereby.

SECTION 3.06    <u>Counterparts.</u>  This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.

SECTION 3.07    <u>Amendments and Waivers.</u>  This Agreement may not be amended or modified, and no provisions hereof may be waived, without the written consent of the parties hereto. No action taken pursuant to this Agreement, including any investigation by or on behalf of any party hereto, shall be deemed to constitute a waiver by the party taking such action of compliance with any representation, warranty, covenant or agreement contained herein. The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a further or continuing waiver of such breach or as a waiver of any other or subsequent breach. No failure on the part of any party hereto to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power or remedy by such party preclude any other or further exercise thereof or the exercise of any other right, power or remedy. All remedies hereunder are cumulative and are not exclusive of any other remedies provided by Law.

SECTION 3.08    <u>Severability.</u>  The provisions of this Agreement will be deemed severable and the invalidity or unenforceability of any provision hereof will not affect the validity or enforceability of the other provisions hereof; *provided* that if any provision of this Agreement, as applied to any party hereto or to any circumstance, is adjudged by a court, governmental body, arbitrator or mediator not to be enforceable in accordance with its terms, the parties hereto agree that the court, governmental body, arbitrator or mediator making such determination will have the power to modify the provision in a manner consistent with its objectives such that it is enforceable, and/or to delete specific words or phrases, and in its reduced form, such provision will then be enforceable and will be enforced.

SECTION 3.09    <u>Titles and Subtitles.</u>  The article and section headings contained in this Agreement are inserted for convenience only and will not affect in any way the meaning or interpretation of this Agreement.

SECTION 3.10    <u>Construction.</u>  The parties hereto have jointly participated in the negotiation and drafting of this Agreement. If an ambiguity or question of intent or interpretation

arises, this Agreement will be construed as if drafted jointly by the parties hereto and no presumption or burden of proof will arise favoring or disfavoring any party hereto because of the authorship of any provision of this Agreement. Any reference to any federal, state, local or foreign law will also be deemed to refer to such law as amended and all rules and regulations promulgated thereunder, unless the context otherwise requires. The words "including," "includes" and "include" shall be deemed to be followed by "without limitation." Pronouns in masculine, feminine and neuter genders will be construed to include any other gender, and words in the singular form will be construed to include the plural and vice versa, unless the context otherwise requires. The words "this Agreement," herein, "hereof," "hereby," "hereunder" and words of similar import refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited. The parties hereto intend that each representation, warranty and covenant contained herein will have independent significance. If any party hereto has breached any representation, warranty or covenant contained herein in any respect, the fact that there exists another representation, warranty or covenant relating to the same subject matter (regardless of the relative levels of specificity) which such party hereto has breached, will not detract from or mitigate the fact that such party hereto is in breach of the first representation, warranty or covenant.

SECTION 3.11    <u>Remedies.</u>  The parties hereto shall have all remedies for breach of this Agreement available to them as provided by law or equity. Notwithstanding the foregoing, in no event shall the parties hereto have a right to consequential, indirect, special, incidental, exemplary or punitive damages.

**[Signature Pages to Follow]**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**COMPANY:** GREEN FIELD ENERGY SERVICES, INC.

By: _____
Name: Michel B. Moreno
Title: Chief Executive Officer

**INVESTOR:** MOR MGH HOLDINGS, L.L.C.

By: _____
Name: Michel B. Moreno
Title: Manager

[Signature Page to Share Purchase Agreement]