EXHIBIT 1

# United States Bankruptcy Court
### DISTRICT OF DELAWARE

## SUBPOENA IN AN ADVERSARY PROCEEDING

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GREEN FIELD ENERGY SERVICES, INC., et al., | ) | Case No. 13-12783 (KG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| ALAN HALPERIN, AS TRUSTEE OF THE GFES LIQUIDATION TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Proc. No. 15-50262 (KG) |
| | ) | |
| MICHEL B. MORENO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## TO:   General Electric Company, c/o Corporation Trust Center, 1209 Orange Street, Wilmington, New Castle County, Delaware.

☐ YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above adversary proceeding.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above adversary proceeding.

| PLACE OF DEPOSITION: | DATE AND TIME: |
|---|---|
| | |

**X** YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **See Exhibit "A" hereto**

| PLACE:  Manion Gaynor & Manning LLP, 1007 North Orange Street, 10th Floor, Wilmington, DE 19801 | DATE AND TIME: December 21, 2015 at 5:00 p.m. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

**Any organization not a party to this adversary proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify, Fed.R.Civ.P. 30(b)(6) made applicable in adversary proceedings by Rule 7030, Fed.R.Bankr.P.**

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| **ATTORNEYS FOR DEFENDANT MICHEL B. MORENO** | November 25, 2015 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER:
MARC J. PHILLIPS, ESQ., MANION GAYNOR & MANNING LLP, 1007 NORTH ORANGE STREET, 10TH FLOOR, WILMINGTON, DE 19801
TELEPHONE: (302) 657-2100 – **ATTORNEYS FOR  MICHEL B. MORENO**

B255 (12/06) Subpoena in an Adversary Proceeding

| PROOF OF SERVICE | | |
|---|---|---|
| SERVED General Electric Company | DATE 11/25/15 | PLACE The Corporation Trust Company 1209 Orange Street Wilmington, DE 19801 |
| SERVED ON (PRINT NAME) Amy McLaren | | MANNER OF SERVICE Hand delivery at 2:00pm |
| SERVED BY (PRINT NAME) John Garber | | TITLE Process Server |

### DECLARATION OF SERVER

I declare under penalty and perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ___11/25/15___
           DATE

SIGNATURE OF SERVER

___230 N. Market Street  Wilmington, DE 19801___
ADDRESS OF SERVER

Rule 45, Fed.R.Civ.P., Subdivisions (c), (d) and (e), as amended on December 1, 2006, made applicable in cases under the Bankruptcy Code by Rule 9016, Fed.R.Bankr.P.

PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena is issued. If objection has been made, the party serving the subpoena may, on notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On a timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance; or

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that,

subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held; or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information; or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party; or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

#1484201v1

## EXHIBIT A

## DEFINITIONS

1.      As used in these requests, (i) the terms "all," "any," and "each" shall each be construed as encompassing any and all, (ii) the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope, and (iii) the singular form of a noun or pronoun includes the plural form and vice versa.

2.      The term "Adversary Proceeding" means the above-captioned adversary proceeding, *Halperin v. Moreno, et al.*, Adv. Pro. No. 15-50262 (Bankr. D. Del.).[1]

3.      The term "communication" means any transmittal of information, utterance, notation, or statement of any nature including, but not limited to, any inquiry, e-mail, text message, discussion, conversation, correspondence, negotiation, agreement, undertaking, meeting, telephone conversation, letter, note, telegram, telex, advertisement or other form of verbal intercourse, whether in oral, written, or electronic form.

4.      The term "concerning" shall mean relating to, referring to, describing, evidencing or constituting.

5.      The term "document" shall mean and include all "documents" and "designated tangible things" to the broadest extent included and described in Rule 34(a)(1) of the Federal Rules of Civil Procedure, as incorporated by Rule 7034 of the Federal Rules of Bankruptcy Procedure, as applicable, or meeting the definitions of "writing," "recording," or "photograph" set forth in Rule 1001 of the Federal Rules of Evidence.  The term "document" also specifically includes any computer tapes and diskettes or other portable media, computer-readable files and

---

[1] Any capitalized term not otherwise defined herein shall have the meaning ascribed to it in the Complaint.

data stored on any hard drive or other installed devices, electronic calendars, and electronic communications including but not limited to electronic mail.  Any document with any marks such as initials, comments, or notations of any kind is not deemed to be identical to one without such marks and is a separate document within the meaning of this term.

6.      The term "GFES" shall mean Green Field Energy Services, Inc.

7.      The term "GE" shall mean General Electric Company, a New York Corporation with its principal place of business in Fairfield, CT, and any of its subsidiaries or affiliates, including, but not limited to, GE Oil & Gas, Inc. ("GEOG"), GE Capital ("GE Capital"), and GE Energy Financial Services ("GE Energy").

8.      The term "GE Joint Venture" shall mean the joint venture between GE and TGS described in the Third-Party Complaint.

9.      The terms "identify," "identification," or "identity" when used in reference to:

(a)      a person or entity, shall mean to give, to the extent known, the person's or entity's full name, present or last known business and residence address(es), and when referring to a natural person, additionally, the present or last known place of employment and job title; and, if not an individual, state the type of entity, the authority under which it is organized and existing, and the principal place of its business.    Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(b)      document, shall mean to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; (iv) author(s) or originator(s), and (v) recipient(s).    In the alternative, the responding party may

produce the documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

(c)    communication, shall mean to give, to the extent known, the (i) place the communication took place, (ii) identity of persons who made the communication, who received the communication, and who was present when it was made, and (iii) the subject matter communicated.

10.    "MOR DOH" shall refer to MOR DOH Holdings, LLC, a limited liability company registered in the state of Delaware, which is a defendant in the Adversary Proceeding.

11.    The term "Power Generation Business" shall mean an opportunity (that was referenced in the Waiver) for the development, construction, sale and rental of turbine and gas-engine powered power generation, including all activities undertaken in connection with such business opportunity prior to the Waiver and thereafter.

12.    The phrase "relating to" shall mean consisting of, referring to, describing, discussing, constituting, evidencing, containing, mentioning, concerning, pertaining to, summarizing or analyzing.

13.    The term "Technology" shall refer to the knowledge and equipment that allows for or enables the use of a turbine to develop and generate electrical power together with the processes and techniques for installing, modifying, operating and maintaining the same.

14.    "TGS" shall refer to Turbine Generation Services, LLC (f/k/a Green Field Power Generation, LLC and f/k/a Turbine Generation Services, LLC), a limited liability company registered in the state of Louisiana and a defendant in the Adversary Proceeding.

15.    The term "TGS License Agreement" shall refer to the Turbine Driven Power Generation Equipment License Agreement between TPT, as licensor, which granted TGS a

perpetual license to, among other things, make, use, sell, commercialize, or otherwise engage the Technology in the Power Generation Business.

16.     The term "TGS Reimbursement Agreement" shall refer to the agreement headed "Agreement Between Green Field Energy Services, Inc. and Turbine Generation Services, LLC for the Period of November 2012 through June 2013."

17.     The term "TPT" shall refer to Turbine Powered Technology, LLC, a limited liability company registered in the state of Louisiana.

18.     The term "Waiver" shall mean the "Written Consent of the Stockholders and Directors of Green Field Energy Services, Inc." executed in or around May 2013.

19.     The term "You" or "Your" shall mean GE and any of its current or former employees, affiliates, subsidiaries, agents, attorneys, advisors, and representatives, and any other person currently or formerly authorized to act on behalf of GE.

## INSTRUCTIONS

1.     In the event that You object to any of these Requests for Production on the basis of any claim of privilege, state the nature of and fully describe the basis of the privilege asserted. Should You claim that any of these Requests is beyond the scope of permissible discovery, specify, in detail, all of the grounds on which the claim rests.

2.     In answering these Requests, furnish all information available to You.  If You cannot answer a Request after exercising due diligence to secure the information requested herein, please provide a response to the extent possible, specifying Your inability to answer the remainder, and stating whatever information or knowledge You may have concerning the unanswered portion.

3.     It is requested that electronically stored information be produced in accordance with the load file specifications provided by counsel for Defendants.

4.      Unless otherwise indicated, the requests herein relate to the period of January 1, 2012 through and including the date of Your response.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All invoices, purchase orders, or payment records related to any transaction between GE and TGS or TPT.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 2:**

All invoices, purchase orders, or payment records related to any transaction between GE and GFES.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3:**

All drafts or executed versions of contractual agreements between GE and Moreno, GFES, or TGS.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 4:**

All documents and communications that relate or refer to any goods or services provided by TGS to GFES or any request for goods or services from GFES to TGS.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 5:**

All documents or communications that relate or refer to any property purchased by GE or TGS from GFES.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 6:**

All documents or communications that relate or refer to the acquisition of any turbines by TGS, including but not limited to the date and cost of any acquisition and the history of any such acquisition.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 7:**

All documents or communications that relate or refer to the acquisition of any turbines by GFES, including but not limited to the date and cost of any acquisition and the history of any such acquisition.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 82:**

All communications that relate or refer to any amounts owed by GE to TGS.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 9:**

All documents that relate or refer to the TGS License Agreement.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 10:**

All documents or communications that relate or refer to TGS and GE's relationship or contemplated relationship.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 11:**

All documents or communications that relate or refer to GFES and GE's relationship or contemplated relationship.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 12:**

All documents or communications that relate or refer to any investment opportunity in GFES that relate or refer to TGS or to "PowerGen."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 13:**

All documents or communications that relate or refer to any discussions or agreements with GE concerning the Power Generation Business, "PowerGen," or TGS.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 14:**

All documents or communications that relate or refer to any presentations, proposals or pitches made or planned for that relate or refer to the Power Generation Business, "PowerGen," or TGS.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 15:**

All documents or communications that relate or refer to the GE Joint Venture, including expressly TGS' participation in the GE Joint Venture.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 163:**

Any and all documents that relate or refer to any contracts, agreements or any other obligations of TGS to GFES.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 17:**

All communications that relate or refer to Green Field Power Generation, LLC.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 18:**

All communications that relate or refer to obtaining funding or financing for "PowerGen," GFES, or TGS.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 19:**

All communications that relate or refer to any valuation of the Power Generation business.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 20:**

All communications that relate or refer to any valuation of any contemplated joint venture between GE and GFES.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 21:**

All communications that relate or refer to any valuation of any contemplated joint venture between GE and TGS or a "newco" in which Moreno would be involved.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 22:**

All documents or communications that relate or refer to any efforts by GE to invest in either fracing or the Power Generation business.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 23:**

All documents or communications that relate or refer to "Project Cayenne."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 24:**

All documents or communications that relate or refer to GE's consideration of an investment in or loan to GFES.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 25:**

All documents or communications that relate or refer to GE's consideration of an investment in or loan to TGS.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 26:**

All documents or communications that relate or refer to any discussions between Moreno and Mike Hosford.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 27:**

All documents or communications that relate or refer to any discussions between Moreno and Kevin Skillern.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 28:**

All documents or communications that relate or refer to any discussions between TGS and Mike Hosford or Kevin Skillern.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 29:**

All documents or communications that relate or refer to any discussions between GFES and Mike Hosford or Kevin Skillern.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 30:**

All documents and communications relating to communications between GFES or TGS and Colleen Calhoun ("Calhoun") from September 1, 2012 to December 31, 2013.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 31:**

All documents or communications that relate or refer to any market studies or analyses of the Power Generation business.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 32:**

All documents or communications that relate or refer to any financial projections of Project Cayenne or the Power Generation business.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 33:**

All documents or communications that relate or refer to any marketing presentations related to the Power Generation business.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 34:**

All documents or communications that relate or refer to any meetings between GE and Moreno.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 35:**

All documents or communications that relate or refer to any due diligence related to Moreno, TGS or the Power Generation business.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 36:**

All documents or communications that relate or refer to any non-disclosure agreements between GE, TGS or Moreno concerning the Power Generation business or Project Cayenne.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 37:**

All documents or communications that relate or refer to any announcement of affiliation or cooperation between You and GFES, TGS, Moreno or TPT.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 38:**

All documents or communications that relate or refer to a presentation in which Moreno was involved at the January 27-29, 2013 Worldwide Forum in Florence, Italy.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 39:**

All documents or communications that relate or refer to any funding of the Power Generation business.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 40:**

All documents or communications that relate or refer to any evaluation of GFES' financial status.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 41:**

All documents or communications that relate or refer to any evaluation of TGS' financial status.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 42:**

All documents or communications that relate or refer to any decision of whether and how to fund investment in the Power Generation business.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 43:**

All documents or communications that relate or refer to any decision of whether and how to fund investment in or provide capital to GFES.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 44:**

All documents or communications that relate or refer to Jeff Immelt's decision to fund the Power Generation business.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 45:**

All documents or communications that relate or refer to any discussions between Moreno and any third party investment firms.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 46:**

All documents or communications that relate or refer to any financing or potential source of financing of TGS.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 47:**

All documents or communications that relate or refer to any introduction of Moreno to any GE board members or employees.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 48:**

All documents or communications that relate or refer to the terms of any investment by GE in TGS, Project Cayenne or the Power Generation business.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 49:**

All documents or communications that relate or refer to any decision to invest or not invest in fracking.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 50:**

All documents or communications that relate or refer to any business plans or models related to the Power Generation Business.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 51:**

All documents or communications that relate or refer to any promissory note between GE and TGS.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 52:**

All documents or communications that relate or refer to the Agreement for the Manufacture and Sale of Turbine Power Generators executed by GFES, TGS and TPT.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 53:**

All documents or communications that relate or refer to any contemplated use of the $25,000,000 in funding provided by GE to TGS.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 54:**

All documents or communications that relate or refer to the Pledge Agreement by and between MOR DOH Holdings, LLC and GE.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 55:**

All documents or communications that relate or refer to the Written Consent of the Shareholders and Directors of Green Field Energy Services, Inc.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 56:**

All documents or communications that relate or refer the GE Joint Venture.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 57:**

All documents or communications that relate or refer to any communications between Moreno, GFES, or TGS and Edward Padeletti.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 58:**

All documents or communications that relate or refer to any engineering review of TGS' products or power turbines.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 59:**

All documents or communications that relate or refer to the decision to terminate the GE Joint Venture.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 60:**

All documents or communications that relate or refer to the decision to rescind funding for the GE Joint Venture.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 61:**

All documents that reflect or relate to any exchange of marketing presentations between You and GFES or TGS.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 62:**

All documents and communications that relate to or reflect meetings between You and Moreno, GFES, or TGS.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 63:**

All documents and communications relating to the TGS Reimbursement Agreement.

**RESPONSE:**